# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-2503
_____

United States of America

*Plaintiff - Appellee*

v.

Christopher Chappell

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: March 13, 2023
Filed: June 2, 2023

_____

Before COLLOTON, MELLOY, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

A woman discovered an unknown man asleep in her car in front of her home. She called the police. When officers arrived, they roused the man, ordered him out, searched him, and found a pistol. The man told the officers that he did not know how he ended up in the car or came to possess the pistol but that he remembered consuming alcohol and methamphetamine the day before. He was later identified as Christopher Chappell, a felon.

Chappell was indicted on one count of possession of a firearm by a felon.  *See* 18 U.S.C. §§ 922(g)(1), 924(a)(2).  While in jail prior to pleading guilty, he sexually assaulted multiple corrections officers.  Later, following his guilty plea, jail personnel discovered him with a six-inch metal shank.

At sentencing, one of the assaulted corrections officers testified.  She described how Chappell, without her consent, rubbed her thigh and buttocks with his hand while she was serving breakfast.  Another jail employee testified about the shank.  Based on these accounts, the district court[1] concluded that Chappell did not qualify for an acceptance-of-responsibility reduction.  *See* U.S.S.G. § 3E1.1(a).  The court further found that Chappell had a prior felony conviction in Kansas for attempted aggravated assault of a police officer with a deadly weapon and that this offense was a crime of violence that qualified him for a base offense level of 20 under U.S.S.G. § 2K2.1(a)(4)(A).  Determining an advisory sentencing guidelines range of 100 to 120 months' imprisonment, the court sentenced Chappell to 108 months.

On appeal, Chappell argues that the district court erred in denying an acceptance-of-responsibility reduction and in determining that the attempted-aggravated-assault offense is a crime of violence under the sentencing guidelines.  We reject both points.

Beginning with acceptance of responsibility, a district court may apply a two-level reduction under § 3E1.1(a) where a defendant has shown "a recognition and affirmative responsibility for the offense and sincere remorse."  *United States v. Cooper*, 998 F.3d 806, 810 (8th Cir. 2021).  Merely pleading guilty does not entitle a defendant to this reduction.  *Id.*  Rather, § 3E1.1(a) is intended "to distinguish a sincerely remorseful defendant from a defendant not manifesting penitence."  *Id.* (brackets omitted).  Thus, we have consistently affirmed denials of this reduction to

---

[1]The Honorable Greg Kays, United States District Judge for the Western District of Missouri.

defendants whose conduct "belies their claims of contrition," *id.*, even where that conduct was unrelated to the underlying offense and committed in jail while awaiting sentencing, *see, e.g.*, *United States v. Arellano*, 291 F.3d 1032, 1035 (8th Cir. 2002). We give "great deference" to a sentencing judge's denial of an acceptance-of-responsibility reduction and review for clear error only. *United States v. Davis*, 875 F.3d 869, 875 (8th Cir. 2017).

Chappell insists that he should have received a § 3E1.1(a) reduction because he pleaded guilty and promptly withdrew from continued criminality, emphasizing that the first of the sexual assaults was committed well over a year after his arrest. But we agree with the district court that, Chappell's guilty plea notwithstanding, this is "probably as clear a case" as one could find of a defendant who has not accepted responsibility for his criminal conduct. Chappell's deviant behavior while incarcerated—molesting corrections officers and carrying a shank—is hardly emblematic of a "sincerely remorseful defendant." *See Cooper*, 998 F.3d at 810. That this behavior may have occurred after some cessation of his offense conduct does not convince us otherwise. *See United States v. Tjaden*, 473 F.3d 877, 879-80 (8th Cir. 2007) (affirming the denial of a § 3E1.1(a) reduction where the defendant had terminated his check-kiting operation but later initiated a new fraud scheme). Thus, we find no clear error in the district court's denial of an acceptance-of-responsibility reduction under § 3E1.1(a).

We now address the district court's crime-of-violence determination. The sentencing guidelines provide for a base offense level of 20 if the defendant committed the underlying offense "subsequent to sustaining one felony conviction of . . . a crime of violence." U.S.S.G. § 2K2.1(a)(4)(A). The guidelines define a "crime of violence" to include an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). "Physical force" is "force capable of causing physical pain or injury to another person." *United States v. Quigley*, 943 F.3d 390, 394 (8th Cir. 2019). We review *de novo* a sentencing judge's determination that an offense qualifies as a crime of violence. *United States v. Fields*, 863 F.3d 1012, 1013 (8th Cir. 2017).

Chappell's prior Kansas conviction was for attempted aggravated assault of a police officer with a deadly weapon. At the time of his conviction, the statute proscribing this offense read, in relevant part:

**21-5412. Assault; aggravated assault; assault of a law enforcement officer; aggravated assault of a law enforcement officer.**

    (a) Assault is knowingly placing another person in reasonable apprehension of immediate bodily harm . . . .

    (c) Assault of a law enforcement officer is assault, as defined in subsection (a), committed against:

        (1) A uniformed or properly identified state, county or city law enforcement officer while such officer is engaged in the performance of such officer's duty . . . .

    (d) Aggravated assault of a law enforcement officer is assault of a law enforcement officer, as defined in subsection (c), committed:

        (1) With a deadly weapon . . . .

Kan. Ann. Stat. § 21-5412 (2011).

Chappell argues that this offense lacks a physical-force element because the underlying assault portion of the statute requires only that the defendant cause "reasonable apprehension" of bodily harm, not that he cause, or even threaten, bodily harm itself. We rejected a virtually identical argument in *United States v. Price*, where the defendant had been convicted of attempted aggravated assault under § 21-5412's predecessor statute. 851 F.3d 824, 825-26 (8th Cir. 2017). There, we explained that the statute's underlying assault clause "requires that the defendant make the victim reasonably fear immediate physical harm," which, we concluded, requires at least the threatened use of violent force. *Id.* at 826;[2] *see also Jones v.*

---

[2]The version of Kansas's assault statute that we considered in *Price* differed from the version here in the following respect only: it defined assault as "*intentionally* placing another person in reasonable apprehension of immediate

*United States*, 922 F.3d 864, 867 (8th Cir. 2019) ("[W]e previously have held that statutes that involve 'knowingly placing another person in fear of imminent bodily harm' or intentionally 'causing fear in another of immediate bodily harm or death' satisfy the force clause [of the Armed Career Criminal Act]." (brackets omitted)). And Chappell does not dispute that if the assault offense is a crime of violence under the guidelines, an attempt to commit that offense qualifies as well. *See Price*, 851 F.3d at 826; *United States v. Brown*, 1 F.4th 617, 620-21 (8th Cir. 2021) (confirming that a "crime of violence" under the guidelines encompasses inchoate offenses). Accordingly, the district court did not err in determining that Chappell's conviction for attempted aggravated assault of a police officer with a deadly weapon was a conviction for a crime of violence that raised his base offense level under U.S.S.G. § 2K2.1(a)(4)(A).

We therefore affirm Chappell's sentence.

_____

---

bodily harm," rather than "*knowingly*" doing the same. *See* 851 F.3d at 826. We see no reason why this difference should render *Price*'s holding any less binding, and Chappell does not argue otherwise or even cite *Price* in his briefs.